1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11   DWAYNE DELUNA,

12            Petitioner,                No. CIV S-00-2414 LKK JFM P

13        vs.

14   A.A. LAMARQUE, et al.,

15            Respondents          <u>FINDINGS AND RECOMMENDATIONS</u>

16   _____/

17            Petitioner is a state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1996 conviction in

19   Sacramento County Superior Court on charges of first degree murder with a special circumstance

20   finding that petitioner committed the murder while committing a robbery and robbery with

21   personal use of a firearm.  Petitioner was sentenced to life without the possibility of parole.

22   Petitioner claims he received ineffective assistance of counsel based on seven separate grounds.

23   Petitioner's July 27, 2001 amended petition is now before the court.[1]

24   _____

25        [1] By order filed July 5, 2001, respondents' motion to dismiss petitioner's unexhausted
     claim was granted and petitioner was granted leave to file an amended petition raising only
26   exhausted claims.

FACTS[2]

> On the evening of October 23, 1994, employees of a restaurant began closing the restaurant when a man wearing a ski mask entered through the back door.  The man walked to the front, pointed a gun at the employees, and ordered them to the back of the restaurant.  The gunman threw Lamburth, the shooting victim, to the ground and again ordered the group to the back.  Lamburth rose to his feet with his hands in the air.  While he was doing so, the gunman shot Lamburth in the chest.
>
> Another man wearing a bandanna over his face entered the restaurant office.  He was armed with a handgun.  he ordered the restaurant manager to fill a bag with cash.  The man took the loaded bag and ran out the back door with the gunman who shot Lamburth.  One of the employees, Eric Potts, was a high school classmate of [petitioner].  He thought he recognized [petitioner] as the man who shot Lamburth.
>
> On November 2, 1994, Detective Joseph Dean of the Sacramento Sheriff's Department took [petitioner] to the police station for questioning.  [Petitioner] denied he was at the restaurant on the night of the robbery and murder.  Dean invited [petitioner] to telephone his mother.  Then Dean taped the conversation.  During the call, [petitioner] said to his mother, "It's not that I meant to kill him.  He just looked like he was going to do something."
>
> At trial, [petitioner] testified on his own behalf.  He admitted he planned the robbery with his codefendant.  When [petitioner] ordered the restaurant employees to the back of the establishment, they looked shocked and did not move.  [Petitioner] tried to get Lamburth to move by grabbing him and pulling.  Despite the physical coercion, Lamburth stood without moving.  Then the gun went off.  [Petitioner] claimed that he did not aim the gun or intend for it to fire.

(People v. Deluna, slip op. at 2-3.)  Petitioner was born March 15, 1977; at the time of the

murder petitioner was 17 years old.  (Clerk's Supplemental Transcript on Appeal ("CST"), at 2.)

## ANALYSIS

### I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in

state court proceedings unless the state court's adjudication of the claim:

---

[2]  The facts are taken from the opinion of the California Court of Appeal, Third Appellate District, Division Four, in People v. Deluna, No. C025160 (Oct. 20, 1998).

1
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5
28 U.S.C. § 2254(d).

6
Under section 2254(d)(1), a state court decision is "contrary to" clearly

7
established United States Supreme Court precedents if it applies a rule that contradicts the

8
governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

9
indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

10
result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

11
(2000)).

12
Under the "unreasonable application" clause of section 2254(d)(1), a federal

13
habeas court may grant the writ if the state court identifies the correct governing legal principle

14
from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

15
prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ

16
simply because that court concludes in its independent judgment that the relevant state-court

17
decision applied clearly established federal law erroneously or incorrectly. Rather, that

18
application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

19
(2003) (it is "not enough that a federal habeas court, in its independent review of the legal

20
question, is left with a 'firm conviction' that the state court was 'erroneous.'")

21
The court looks to the last reasoned state court decision as the basis for the state

22
court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court

23
reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

24
habeas court independently reviews the record to determine whether habeas corpus relief is

25
available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

26
/////

1   II.  Petitioner's Ineffective Assistance of Counsel Claims

2        A.  Standards

3            The standards applicable to petitioner's federal ineffective assistance of counsel

4   claim were established by the Supreme Court in Strickland v. Washington, 466 U.S. 688 (1984).

5   In order to prevail on the claim petitioner must show (1) an unreasonable error by counsel and (2)

6   prejudice flowing from that error.  To satisfy the first prong, petitioner must show that,

7   considering all the circumstances, counsel's performance fell below an objective standard of

8   reasonableness.  The court must determine whether in light of all the circumstances, the

9   identified acts or omissions were outside the wide range of professionally competent assistance.

10  Id. at 690.  "Review of counsel's performance is highly deferential and there is a strong

11  presumption that counsel's conduct fell within the wide range of reasonable representation."

12  United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986).

13           To meet the prejudice prong, petitioner must show that "there is a reasonable

14  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

15  been different."  Strickland, 466 U.S. at 694.  A reasonable probability is "a probability sufficient

16  to undermine confidence in the outcome."  Id.  The focus of the prejudice analysis is on "whether

17  counsel's deficient performance renders the result of the trial unreliable or the proceeding

18  fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

19       B.  Failure to Investigate or Challenge the Warrantless Arrest

20           Petitioner contends trial counsel was ineffective because he failed to investigate or

21  challenge petitioner's arrest at school without a warrant.  Petitioner argues that the police chose

22  to arrest petitioner at school rather than at home so the police could isolate petitioner from his

23  family and friends and gain incriminating admissions.

24           The Sacramento County Superior Court denied petitioner's petition for habeas

25  relief, finding that a warrantless arrest for a felony made in any place other than within a

26  residence may be valid if it is supported by probable cause.  (Answer, Appendix F, at 2.)

4

1  Because petitioner did not allege nor show that the arrest was not based on probable cause, the

2  court found that petitioner had failed to state with particularity the facts upon which he was

3  relying to justify relief.  (Answer, Appendix F, at 2.)  The court also found petitioner had failed

4  to meet the prejudice prong of <u>Strickland</u> as well.  (Answer, Appendix F, at 2.)

5          Warrantless arrest in a public place, as opposed to the arrestee's residence, based

6  upon probable cause that a felony has been committed does not violate the Fourth Amendment.

7  <u>United States v. Watson</u>, 423 U.S. 411, 423-24 (1976); <u>see</u> <u>Payton v. New York</u>, 445 U.S. 573

8  (1980) (warrantless arrest of suspect in his residence presumptively unreasonable).

9          Here it is undisputed petitioner was arrested at his school, which is a public

10 place.[3]  Petitioner has not asserted there was a lack of probable cause for his arrest.  Michael

11 Walthers, who witnessed the robbery and shooting, told Detective Dean he thought petitioner

12 was the person who shot the victim.  (RT 140.)  On the basis of that information alone, Detective

13 Dean had probable cause to go to petitioner's school and arrest petitioner.  Thus, petitioner could

14 not demonstrate a lack of probable cause for his arrest.  Because there was no valid basis for trial

15 counsel to challenge the warrantless arrest, counsel cannot be found to be ineffective for failing

16 to take such futile action.  <u>Jones v. Smith</u>, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing <u>Boag</u>

17

18        [3]  In his traverse, petitioner disputes that his school was a public place and argues he had
   a legitimate expectation of privacy in his person while on school grounds.  However, under
19 California law, the term "public place" means "any place which is open to common or general
   use, participation and enjoyment by members of the public."  <u>See</u> <u>People v. Tapia</u>, 129
20 Cal.App.4th 1153, 1160 (Cal.App. 2 Dist., 2005).  It is commonly recognized that public school
   is open to the public, despite petitioner's conclusory allegation that the "public cannot move to
21 and fro through the school grounds."  Just because a school policy requires visitors to check in
   with the office first, usually for safety reasons, that policy does not render a public school private.
22        Petitioner's citation to <u>New Jersey v. T.L.O.</u>, 469 U.S. 325 (1985) is equally unavailing,
   because its facts are distinguishable.  <u>T.L.O.</u> dealt with an Assistant Vice Principal who searched
23 a student's purse, and does not stand for the broad proposition that all warrants become necessary
   when school officials act at the behest of the police.  <u>Id.</u>  Indeed, the high court held that school
24 officials need not obtain a warrant before searching a student who is under their authority, so
   long as the search was reasonable under the circumstances.  <u>Id.</u>  The Court concluded that the
25 reasonableness standard of the Fourth Amendment in this context requires only a reasonable
   suspicion, not probable cause, to believe that the search would uncover evidence of a rule or law
26 violation.  <u>Id.</u> at 339-41.

1   v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d 1434, 1445

2   (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").  This

3   claim must fail.

4          C.  Failure to Move to Suppress Evidence

5              i.  Based on Cal. Penal Code § 851.5

6          Petitioner contends trial counsel was ineffective because he failed to file a motion

7   to suppress evidence based on the grounds that the police violated California Penal Code

8   § 851.5[4] by failing to inform petitioner he had a right to make a post-arrest telephone call and by

9   refusing to allow petitioner to make a telephone call immediately after petitioner was arrested.

10  Petitioner further alleges that had the sign required by Cal. Penal Code Section 851.5 been

11  posted, it would have "afforded him the opportunity to think about calling an attorney (if not

12  actually calling one). . . .  (Amended Petition, at 7.)

13         The Sacramento County Superior Court, on habeas review, found that petitioner

14  failed to allege that more than three hours elapsed before he was allowed to phone his mother, or

15

16          [4] California Penal Code § 851.5 provides:
    (a) Immediately upon being booked, and, except where physically impossible, no later than three
17  hours after arrest, an arrested person has the right to make at least three completed telephone
    calls, as described in subdivision (b).
18  The arrested person shall be entitled to make at least three such calls at no expense if the calls are
    completed to telephone numbers within the local calling area.
19  (b) At any police facility or place where an arrestee is detained, a sign containing the following
    information in bold block type shall be posted in a conspicuous place:
20  That the arrestee has the right to free telephone calls within the local dialing area, or at his own
    expense if outside the local area, to three of the following:
21  (1) An attorney of his choice or, if he has no funds, the public defender or other attorney assigned
    by the court to assist indigents, whose telephone number shall be posted. This phone call shall
22  not be monitored, eavesdropped upon, or recorded.
    (2) A bail bondsman.
23  (3) A relative or other person.
    (c) These telephone calls shall be given immediately upon request, or as soon as practicable.
24  (d) This provision shall not abrogate a law enforcement officer's duty to advise a suspect of his
    right to counsel or of any other right.
25  (e) Any public officer or employee who willfully deprives an arrested person of any right granted
    by this section is guilty of a misdemeanor.
26  Id.

                                                    6

1   that he had been at the station in the interview room for an overextensive period of time before

2   he was allowed to call his mother.  (Answer, Appendix F, at 4.)  The state court found petitioner

3   had cited no authority for his theory that a violation of Cal. Penal Code § 851.5 would result in

4   the exclusion of the recording of the telephone conversation and found Proposition 8[5] would

5   disallow such an exclusion.  (Answer, Appendix F, at 4.)  In addition, the state court found that

6   the mere failure to post signs required by Cal. Penal Code § 851.5 would not result in the

7   exclusion of this evidence, particularly in light of Proposition 8.

8           This court finds the state court's ruling on this claim to be consistent with

9   Supreme Court authority and reasonable in light of the facts.  The record reflects that Detective

10  Dean notified petitioner's mother after arresting petitioner at the high school:

11          A.  I had talked with his mom on the phone after picking Tommy
            up at school, and in talking with her she indicated that she did want
12          to talk to him, and I told her that that opportunity would be made
            as soon as possible.

13
            Q.  All right.  Then after this conversation was completed, then did
14          you bring a phone in so Mr. DeLuna could contact his mother?

15          A.  Yes.

16  (RT 214.)  Petitioner states he was arrested at school at 8:20 a.m.  (Amended Petition, at 5.)  The

17  recording of petitioner's police interview was transcribed, and the transcript reflects that

18  petitioner's questioning began at 10:20 a.m.  (CST at 1.)  Petitioner was read his Miranda[6] rights

19  shortly thereafter.  (CST at 3.)  After reading petitioner his rights, Detective Dean asked

20  _____

21      [5] Proposition 8 (Cal. Const. art. I, § 28, subd. (d)), provides, *inter alia*, that federal
    constitutional standards govern review of issues related to the suppression of evidence seized by
22  the police.  People v. Lenart , 32 Cal.4th 1107, 1118 (2004).)  Thus, "[w]hen the admissibility of
    evidence is challenged as being the 'fruit' of an unlawful search and seizure, article I, section 28,
23  subdivision (d) of the California Constitution requires [California courts] to follow the decisions
    of the United States Supreme Court."  People v. Bennett, 17 Cal.4th 373, 390 (1998)(citations
    omitted.)
24
        [6] In Miranda v. Arizona, the United States Supreme Court held that custodial
25  interrogation must be preceded by advice to the potential defendant that he has the right to
    consult with a lawyer, the right to remain silent and that anything he says can be used in evidence
26  against him.  Id., 384 U.S. 436, 469-73 (1966).

1  petitioner "Understanding that right, do you wish to talk to us now?"  Petitioner responded,

2  "Yes." (CST at 4.)

3          After petitioner signed the form acknowledging he had been read his rights,

4  Detective Dean asked petitioner to tell him what happened at Bistro Pete's.  (CST at 5.)  During

5  this questioning period, petitioner did not ask to speak with his mother.  (CST 1-11.)  Petitioner

6  acknowledges that once he exercised his <u>Miranda</u> right to end the interrogation, he was granted a

7  phone call to his mother.  (Amended Petition, at 5.)  Although the record does not reflect at what

8  time the questioning ended, the transcript reflects about seven pages of questions and answers

9  before petitioner was allowed to speak to his mother.  (CST 5-11.)

10         Thus, the record reflects petitioner's mother was notified shortly after petitioner's

11  arrest that petitioner had been taken into custody.  Petitioner was not held for an unreasonable

12  length of time prior to being allowed to speak with his mother by telephone.  Although petitioner

13  now states he was held for "some three-plus hours" after his arrest before he was granted his

14  phone call (Amended Petition at 5), the questioning began at 10:20 a.m. and the entire transcript

15  totals only 11 pages (double-spaced).  It is unlikely this question and answer session exceeded

16  one hour, but even if it took an entire hour, petitioner was allowed to speak with his mother at

17  that time, which would have been three hours after his 8:20 a.m. arrest.

18         Based on this record, any motion to suppress the statement on this basis would

19  have been futile, so trial counsel was not incompetent for failing to make such a motion.[7]

20  /////

21  /////

22  /////

23  /////

24  /////

25  ───────────────

26  [7]  The record reflects that trial counsel did move to suppress the telephone conversation
    itself, which the trial court denied.  (RT 41.)

1       ii.  Based on Cal. Welf. & Inst. Code § 627

2           Petitioner further contends that California Welfare and Institutions Code § 627(b)[8]

3   requires that a minor be informed no later than one hour after he has been taken into custody that

4   the minor has the right to make at least two phone calls from where he is being held to his parent,

5   guardian, relative or employer, and another to his attorney.  (Amended Petition, at 7-8.)

6   Petitioner contends the police also violated Cal. Welf. and Inst. Code § 627(a) because they

7   failed to take immediate steps to notify petitioner's parents that he had been arrested, and alleges

8   his mother attempted to call petitioner at the jail, but was refused because petitioner was being

9   questioned.  (Ex. E, Amended Petition.)  Petitioner also states the police failed to notify his

10  parents of the nature of the alleged offenses as well as petitioner's rights, allegedly in violation of

11  18 U.S.C. § 5033.[9]  (Amended Petition, at 8.)

12  /////

13

14      [8] California Welfare & Institutions Code § 627 provides that:
    (a) When an officer takes a minor before a probation officer at a juvenile hall or to any other
15  place of confinement pursuant to this article, he shall take immediate steps to notify the minor's
    parent, guardian, or a responsible relative that such minor is in custody and the place where he is
16  being held.
    (b) Immediately after being taken to a place of confinement pursuant to this article and, except
17  where physically impossible, no later than one hour after he has been taken into custody, the
    minor shall be advised and has the right to make at least two telephone calls from the place
18  where he is being held, one call completed to his parent or guardian, a responsible relative, or his
    employer, and another call completed to an attorney. The calls shall be at public expense, if the
19  calls are completed to telephone numbers within the local calling area, and in the presence of a
    public officer or employee. Any public officer or employee who willfully deprives a minor taken
20  into custody of his right to make such telephone calls is guilty of a misdemeanor.
    Id.
21
        [9] Title 18 U.S.C. § 5033 provides:
22      Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the
    arresting officer shall immediately advise such juvenile of his legal rights, in language
23  comprehensive to a juvenile, and shall immediately notify the Attorney General and the juvenile's
    parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents,
24  guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.
        The juvenile shall be taken before a magistrate judge forthwith. In no event shall the
25  juvenile be detained for longer than a reasonable period of time before being brought before a
    magistrate judge.
26  Id.

1    The state court did not address this claim specifically, but did find that petitioner

2    had not been held for an overextensive period of time prior to being allowed to phone his mother.

3    The state court also found that petitioner's claim that he was entitled to immediate access to his

4    mother by phone was only supported by case law that had been abrogated by the passage of

5    Proposition 8.  (Answer, Appendix F, at 4.)  And, because petitioner alleged no grounds that

6    would have led to the exclusion of the telephone conversation, the state court also found

7    petitioner had failed to demonstrate trial counsel's deficient performance.  (Id.)

8    "To show prejudice under Strickland resulting from the failure to file a motion, a

9    defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court

10    would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that

11    there would have been an outcome more favorable to him."  Wilson v. Henry, 185 F.3d 986, 990

12    (9th Cir. 1999) (citing Kimmelman, 477 U.S. at 373-74).  Petitioner has failed to demonstrate

13    that a motion to suppress would have been granted as meritorious.  As noted above, petitioner

14    was not held for an unreasonable amount of time prior to being granted a phone call to his

15    mother.  Detective Dean testified that he informed petitioner's mother about petitioner's arrest

16    shortly after taking him into custody.  (RT 214.)  Moreover, in the transcription of petitioner's

17    phone conversation with his mother, his mother acknowledges that she was informed of all the

18    charges leveled against petitioner.  (CST at 12.)  In addition, petitioner has provided no legal

19    authority to demonstrate that even if his rights under Cal. Welf. and Inst. Code § 627 or 18

20    U.S.C. § 5033 had been violated, that the trial court would have excluded petitioner's uncoerced

21    confession to his mother.  This claim must also fail.

22                     iii.  Based on Expectation of Privacy

23    Petitioner argues trial counsel should have filed a motion to suppress evidence of

24    the recorded telephone conversation between him and his mother while petitioner was in custody

25    at the Sheriff's Department.  Petitioner contends the telephone call was a confidential

26    communication in which he had an expectation of privacy, and claims the telephonic evidence

should have been excluded under Cal. Penal Code § 632 (governing eavesdropping on or

recording confidential communications) and 18 U.S.C. § 2516 (governing authorization for

interception of wire, oral, or electronic communications).  (Amended Petition at 9-12.)

The Sacramento County Superior Court rejected this claim as follows:

First, petitioner claims the conversation would have been
suppressed because he believed he was being afforded privacy and
neither he nor his mother was advised that their "confidential"
communication was being recorded.  This is not borne out by the
facts, however, as the transcript of the telephone conversation
indicates at least five different times during the conversation in
which the petitioner, his mother, and an unidentified female who
appears to have been petitioner's girlfriend all stated their beliefg
that their conversation was probably being listened to by the
authorities and even being taped by them.  Nor does petitioner
present any evidence that he was told by any officer that his call
would be confidential.  It has long been held that recording a jail
conversation is not a Fourth Amendment violation (Lanza v. New
York (1962) 370 U.S. 139, 143-144), and since the passage of
Proposition 8 (Cal. Const., art. I, § 28(d)) in 1982, this rule has
applied in California.  (Ahmad A. v. Superior Court (1989) 215
Cal.App.3d 528, 534).  Nor was this a case in which a privilege
was involved, or petitioner lulled into a sense of privacy (People v.
Von Villas (1992) 11 Cal.App.4th 175, 212-223).

Petitioner also claims that under Penal Code 632(c), the telephone
conversation was a "confidential communication," because it was
carried on in circumstances as may reasonably indicate that any
party to it desired it to be confined to the parties to the
conversation.  Penal Code § 632(c), however, also provides that a
conversation is not a "confidential conversation" if made "in any . .
. circumstance in which the parties to the communication may
reasonably expect that the communication may be overheard or
recorded."  As discussed above, petitioner, his mother, and his
girlfriend all mentioned throughout the telephone call their belief
that the call was being overheard and/or recorded.  Further, Penal
Code § 632(e) also provides that Penal Code § 632 does not apply
at all "to any telephonic communication system used for
communication exclusively within a state, county, city and county,
or city correctional facility."  Thus, the call was not a "confidential
communication" under Penal Code § 632(c).

Next, petitioner claims that the recording of the call violated
wiretap laws under 18 U.S.C. § 2510 et seq. and § 2516(2).
However, the federal courts have long held that 18 U.S.C.
§ 2510(5)(a)(ii) allows routine prison monitoring of inmates'
telephone calls as a prison security measure, as this is an activity
by an investigative or law enforcement officer in the ordinary

1               course of his or her duties (see U.S. v. Daniels (7th Cir. 1990) 902

2               F.2d 1238; Bunnell v. Superior Court (1994) 21 Cal.App.4th 1811, 1821).  Thus, the recording of the call in this case did not violate

3               these federal wiretap laws.

4 (People v. Deluna, slip opin. at 2-3.)

5         The court record reflects that trial counsel filed a motion to suppress evidence of

6 petitioner's telephonic conversation with his mother on the grounds that petitioner had a

7 reasonable expectation of privacy in the conversation.  (CT 222-27.)  During argument on the

8 motion to suppress, the trial court noted it had "watched very carefully to see if there was any

9 indication by the officers that this was going to be a private conversation, and it would be

10 confidential between he and his mother. . . ."  (RT 29.)  "[G]enerally there should not be any

11 expectation of privacy in a jail."  (RT 29.)  Trial counsel argued that petitioner had been held in a

12 police station and not a jail, and that the phone had been brought in to petitioner and made

13 available to petitioner to converse with his mother, and then the officer left the room and shut the

14 door, arguably creating a reasonable expectation of privacy.  (RT 31.)  The trial court denied this

15 motion.  (RT 41.)

16         The state court's decision was not contrary to or an unreasonable application of

17 clearly established federal law.  The Fourth Amendment guarantees "[t]he right of the people to

18 be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  The right

19 protects against state intrusion into a realm where a person has a legitimate expectation of

20 privacy, i.e., a subjective expectation of privacy "that society is prepared to recognize as

21 reasonable."  Katz v. United States, 389 U.S. 347, 361 (1967); United States v. Van Poyck, 77

22 F.3d 285, 290 (9th Cir.), cert. denied, 519 U.S. 912 (1996)(pretrial detainee did not have

23 subjective or reasonable expectation of privacy in telephone calls from jail at Metropolitan

24 Detention Center).  A prisoner has no legitimate expectation of privacy in public jail visiting

25 rooms or in his cell.  Lanza v. New York, 370 U.S. 139 (1962); United States v. Hitchcock, 467

26 F.2d 1107 (9th Cir. 1972), cert. denied, 410 U.S. 916 (1973).  While the Fourth Amendment

protects against electronic eavesdropping on telephone conversations sought to be kept private,

<u>Katz</u>, 389 U.S. at 353, "no prisoner should reasonably expect privacy in his outbound telephone

calls." <u>Van Poyck</u>, 77 F.3d at 290-92.

        Under the federal wiretap statute, an expectation of privacy is defined as "an

expectation that such communication is not subject to interception under circumstances justifying

such expectation." 18 U.S.C. § 2510(2). This expectation of privacy must be both (1)

subjectively entertained and (2) objectively reasonable, just as it must under the Fourth

Amendment. <u>See</u> <u>Kee v. City of Rowlett</u>, 247 F.3d 206, 211-216 (5th Cir. 2001); <u>see also</u> <u>United</u>

<u>States v. Clark</u>, 22 F.3d 799, 801 (8th Cir. 1994).

        Here, petitioner's claims that he had an expectation of privacy are belied by the

telephone conversation itself. Petitioner's mother remarked early in the conversation that "you

never know about these phones." (CST at 15.) Petitioner replied, "Oh, well, it's going to have to

come out sometime anyways." (CST at 15.) Later, petitioner's mother warned, "I'll have to talk

to you when I see you 'cause I don't trust these phones." (CST at 16.) His mother also stated,

"There's a couple questions I'd ask you, but I don't trust these phones." (CST at 19.) Petitioner

later remarked, "Man, I think they're fuckin' doing something with this phone call." (CST at

22.) Another female on the phone, apparently petitioner's girlfriend, responded, "They're

recording it, Tom." (CST 22.) The woman warned petitioner again later, stating "Oh, they are

probably listening in on the phone call," and petitioner replied, "I know they are, probably, but

oh, well." (CST 24.)

        These statements made throughout the phone conversation belie any assertion

petitioner subjectively believed law enforcement created a reasonable expectation of privacy in

the phone call. California Penal Code § 632(c) states that a recorded conversation need not be

excluded where "the parties to the communication may reasonably expect that the

communication may be overheard or recorded." <u>Id.</u> Thus, trial counsel's failure to argue

/////

1 Cal. Penal Code § 632 in support of his motion to suppress would not have changed the outcome

2 of the motion to suppress the conversation between petitioner and his mother.

3       Petitioner's situation defied an objective belief he had a reasonable expectation of

4 privacy as well.  Petitioner was handcuffed to a table in an interview room at the sheriff's

5 department at the time of the conversation, and had just been arrested and questioned about his

6 involvement in the robbery and murder.  Thus, petitioner had no objectively reasonable

7 expectation of privacy in his conversation with his mother, either.  See Siripongs v. Calderon, 35

8 F.3d 1308, 1319 (9th Cir. 1994)(no expectation of privacy where police surreptitiously recorded

9 defendant's telephone call while defendant was in custody at police station).

10       Because petitioner could not demonstrate he had a subjective expectation of

11 privacy that was objectively reasonable under the circumstances, this court cannot find trial

12 counsel was ineffective for failing to include in the motion to suppress the application of Cal.

13 Penal Code § 632 or the legitimacy of the wiretap.  This claim must also fail.

14             iv.  Based on Privilege

15       Petitioner contends that his trial counsel was ineffective because he failed to move

16 to suppress the evidence of the telephone conversation on the grounds that the communication

17 between petitioner and his mother was privileged.  Petitioner claims his mother was a "religious

18 adviser" within the meaning of Cal. Penal Code § 636.  (Amended Petition at 11-12.)  Petitioner

19 claims communications between a minor and his parent should be privileged.  (Amended Petition

20 at 12-14.)

21       The Sacramento County Superior Court rejected both of these claims:

22     [P]etitioner claims that the recording of the call violated wiretap
    laws under Penal Code § 636(a), which prohibits the recording of a
23     person in physical custody of a law enforcement officer when the
    person is engaged in a conversation with his "religious advisor."
24     Petitioner claims that his mother is qualified as his "religious
    advisor."  Petitioner, however, offers no proof that petitioner's
25     mother is a clergyperson of any type.  Nor does the content of the
    phone conversation indicate at any point in time that he and his
26     mother ever discussed religion or any religious value.  And,

1    petitioner talked not only with his mother but also with at least two
2    other persons during the phone conversation, and made admissions
     to them.
3    . . .

4    Petitioner next claims that his conversation with his mother was
     "privileged."  He cites no statutory provision, however, providing
5    for a parent-child privilege.  Indeed, none exists, and he admits that
     none exists.  Instead, he argues that one *should* exist.  That,
     however, is a decision for the Legislature and not the courts.

6

7    (People v. Deluna, slip op. at 4-5.)

8         The above state court decisions were not contrary to, or an unreasonable

9    application of, clearly established Federal law, nor were they based on an unreasonable

10   determination of the facts.  Petitioner's telephone conversation with his mother was devoid of

11   religious content.  Moreover, there is no recognized parent-child privilege under California law

12   or federal law.  In re Terry W., 69 Cal.App.3d 745, 747-49 (1976); United States v. Penn, 647

13   F.2d 876, 884-85 (9th Cir. 1980)(en banc).  Thus, trial counsel cannot be found to be ineffective

14   for failing to raise these claims in a motion to suppress.

15                    v.  Based on Fifth Amendment

16        Petitioner claims trial counsel was ineffective because he failed to move to

17   exclude evidence on the grounds that petitioner's request to speak with his mother amounted to

18   an invocation of his Fifth Amendment right to remain silent.  (Amended Petition, at 14-15.)

19        The Sacramento County Superior Court rejected this claim as follows:

20   Finally, petitioner argues that under People v. Burton (1971) 99
     Cal. Rptr. 1, he was entitled to talk to his mother immediately upon
21   request.  Again, he has not demonstrated that an overextensive
     period of time elapsed between his arrival at the station and his
22   being allowed to call his mother.  In any event, Burton was based
     on state constitutional grounds, and has been abrogated by the
23   passage of Proposition 8 (Ahmad A. v. Superior Court, supra, p.
     533-534; see People v. Rivera (1985) 41 Cal.3d 388, 395).

24

25   (People v. Deluna, slip opin. at 4.)

26   /////

15

1    The California Supreme Court held that, based on <u>Miranda</u>, <u>supra</u>, when a minor

2  is taken into custody and interrogated without an attorney present, the minor's request to see one

3  of his parents, made at any time prior to or during questioning, must be construed as a desire to

4  invoke the Fifth Amendment right to remain silent, absent evidence demanding a contrary

5  conclusion.  <u>People v. Burton</u>, 99 Cal.Rptr. 1 (1971).  But at the time of petitioner's arrest,

6  California had eliminated all state judicial remedies for violations of the privilege against self-

7  incrimination and right to counsel except to the extent the federal constitution compelled them.

8  <u>Ahmad v. Superior Court</u>, 263 Cal.Rptr747 (Cal. App. 1990).  Moreover, in 1979, the United

9  States Supreme Court held that a juvenile's request to talk with a parent does not necessarily

10  constitute an invocation of the Fifth Amendment privilege.  <u>Fare v. Michael C.</u>, 442 U.S. 707

11  (1979).  The Court stated that whether statements obtained during subsequent interrogation of a

12  juvenile who has asked to see his probation officer, but who has not asked to consult an attorney

13  or expressly asserted his right to remain silent, are admissible on the basis of waiver is a question

14  to be resolved on the totality of the circumstances surrounding the interrogation.  <u>Id.</u> at 725-26.

15    Petitioner maintains he asked to contact his mother during his transportation from

16  school to the police station.  The record does not reflect that petitioner asked to speak to his

17  mother prior to questioning.[10]  Detective Dean was not asked whether petitioner had requested to

18  speak to his mother prior to questioning.  (RT 210-18.)  The record reflects, however, that

19  petitioner did not ask to speak to his mother during police questioning.  (CST 1-11.)

20    Even assuming, arguendo, petitioner had asked to speak to his mother, under a

21  totality of the circumstances analysis, petitioner did not invoke his Fifth Amendment right to

22  remain silent.  Petitioner was informed the detectives wanted to speak with him about the events

23  at Bistro Pete's before questioning.  (CST at 3.)  Detective Dean then advised petitioner of his

24

25        [10]  Under California law, when a minor asks to speak to his parent at some point before
     questioning, there is no indication of a desire to invoke his Fifth Amendment privilege where the
     defendant talked to detectives for an extended time without requesting to talk to his mother.

26  <u>People v. Lewis</u>, 26 Cal.4th 334, 385 (2001).

1    <u>Miranda</u> rights and petitioner acknowledged he understood he had the right to remain silent.

2    (CST at 4.)  Before questioning petitioner, Detective Dean specifically asked petitioner whether

3    he wished to talk to the detectives.  (CST at 4.)  Petitioner was 17 years old at this time.  Based

4    on this record, petitioner cannot demonstrate that the trial court would have granted a motion to

5    suppress had trial counsel made such a motion.

6           Moreover, had trial counsel filed such a motion and succeeded, it is likely that the

7    only evidence that would have been suppressed would have been petitioner's statements to

8    Detective Dean.  Because petitioner's incriminating statements were voluntarily made to his

9    mother outside of custodial interrogation, it is unlikely those statements would have been

10   suppressed.  Thus, petitioner has failed to demonstrate the prejudice prong of <u>Strickland</u> on this

11   claim as well.

12                    D.  <u>Motion to Exclude Testimony</u>

13          Petitioner contends that trial counsel should have filed a motion to exclude

14   testimony from David Warfield and Michael Walthers.  The Sacramento County Superior Court

15   did not address these claims in its denial of petitioner's habeas application.  (Answer, Appendix

16   F.)  The California Supreme Court denied petitioner's claims without comment.  (Answer,

17   Appendix J.)  Thus, this court has reviewed the record to determine whether the denial was in

18   error.  <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

19          Petitioner contends Mr. Warfield's testimony concerning petitioner's classroom

20   statements about the death penalty and murder should have been excluded because it was "used

21   to inflame the minds of the jurors."  (Amended Petition at 16.)

22          Mr. Warfield testified that in the spring of 1994, during a history class discussion

23   about a murder trial in the 1920's, petitioner had expressed the view that killing someone would

24   not bother petitioner, and petitioner had wondered what it would be like to kill someone.  (RT

25   176-77.)  Mr. Warfield further testified that in the fall of 1994, during a Government

26   /////

1  International Relation class, petitioner expressed his opinion that the death penalty was not a

2  deterrent to killing someone.  (RT 178.)

3       Mr. Warfield also testified that after the murder at Bistro Pete's Pizza, several

4  students noticed that a number of people connected to Bistro Pete's were absent from school after

5  the murder.  (RT 179.)  In a conversation about why these students were absent, Mr. Warfield

6  testified that Mike Walthers was not in class because he was shook up.  (RT 179.)  Mr. Warfield

7  testified that in response to other students' asking "how come?" petitioner responded that it

8  would not bother him.  (RT 179.)  Mr. Warfield testified that the context of the conversation was

9  there had been a shooting, and Mr. Warfield had expressed that it was a big deal in people's lives

10  because not many had witnessed a murder or even been around someone who had been killed.

11  (RT 180.)  Mr. Warfield stated that "[u]nless you have been in a situation like that . . . – you

12  can't judge somebody for being emotionally distraught or whatever reason he is gone today and

13  they are gone today."  (RT 180.)  Mr. Warfield then testified that petitioner had "turned around

14  and looked at [him] and said you don't know what I have been through.  You don't know what I

15  know."  (RT 180.)

16       The record reflects that trial counsel objected to the admission of this evidence on

17  the grounds of relevance and inadmissible character evidence, and argued that the evidence was

18  more prejudicial than probative under Cal. Evid. Code § 352.  (RT 170.)  The trial court stated it

19  was not troubled with relevance, but was troubled with the remoteness and the prejudicial aspect

20  of this evidence.  (RT 172.)  The court ultimately allowed admission of this evidence.  (RT 173.)

21  Because trial counsel made a timely objection to the admission of this evidence, this court cannot

22  find he was ineffective for failing to move to strike the testimony after the trial court overruled

23  counsel's initial objection.

24       Trial counsel similarly objected to the admission of Mr. Walthers' testimony

25  surrounding unusual pager messages he received shortly after the murder.  Mr. Walthers was

26  friends with petitioner; they attended the same high school, saw each other just about every day

18

1   and played sports together.  (RT 127-28.)  At one time, Mr. Walthers, petitioner and their friend

2   Richard Pinola, all worked at Bistro Pete's Pizza at the same time.  (RT 129-30.)  On a

3   weeknight about a week before October 23, 1994, Mr. Walthers was at Richard Pinola's house.

4   (RT 130; 132.)  Mr. Pinola showed Mr. Walthers two guns, one of which was a wooden-handled

5   revolver .357, which Mr. Pinola testified was the same weapon admitted into evidence as the

6   murder weapon (People's Ex. 20-A).  (RT 131-32.)  Mr. Walthers was working at Bistro Pete's

7   on the night of the robbery and murder.  (RT 133.)  Mr. Walthers saw a guy with a mask come in

8   and witnessed the shooting of David Lamburth.  (RT 134.)

9           A few days after the shooting, Mr. Walthers concluded he knew the shooter was

10  petitioner, "because of the size; the way he was built, the way he – I thought that the guy

11  disguised his voice."  (RT 138-39.)

12          Shortly after the robbery and murder, Mr. Walthers got together with the people

13  who were at Bistro Pete's that night at a house owned by a woman named Ellie.  (RT 142.)

14  Richard Pinola was there.  (RT 142.)  At that time, Mr. Walthers had a pager, which he was

15  wearing that night.  (RT 143.)  During this meeting, Mr. Walthers had a discussion with Richard

16  Pinola about the guns.  (RT 143.)

17          A couple of days after this meeting, the number 187 appeared on Mr. Walthers'

18  pager.  (RT 144.)  Although Mr. Walthers' testified he did not know that 187 was the Penal Code

19  section for murder, he testified that 187 meant murder to him.  (RT 144.)  On cross-examination,

20  Mr. Walthers' testified that he did not remember ever giving his pager number to petitioner.  (RT

21  146.)

22          The record reflects that trial counsel timely objected to the admission of the three

23  pager messages, "187."  (RT 143.)  The court called an unrecorded sidebar conference, after

24  which the trial court overruled counsel's objection to the admission of this evidence.  Because

25  trial counsel made a timely objection to the admission of this evidence, this court cannot find he

26  /////

1    was ineffective for failing to move to strike the testimony after the trial court overruled counsel's

2    initial objection.

3          Moreover, petitioner has failed to demonstrate that had trial counsel moved to

4    strike either or both Mr. Walthers' or Mr. Warfield's testimony, such a motion would have been

5    granted, or that the outcome of petitioner's trial would have been different.  Given the other

6    overwhelming evidence of petitioner's guilt, petitioner cannot demonstrate prejudice from trial

7    counsel's failure to move to strike the specific testimony of Mr. Walthers or Mr. Warfield.  This

8    claim must also fail.

9          E.  Failure to Make Closing Argument

10          Finally, petitioner contends trial counsel's failure to make a closing argument

11    amounts to ineffectiveness of counsel.  (Amended Petition at 16.)  The Sacramento County

12    Superior Court did not address this claim in its denial of petitioner's habeas application.

13    (Answer, Appendix F.)  The California Supreme Court denied petitioner's claim without

14    comment.  (Answer, Appendix J.)  Thus, this court has reviewed the record to determine whether

15    the denial was in error.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

16          Given the weight of the evidence against petitioner, this court cannot find trial

17    counsel was ineffective for failing to make a closing statement.  Petitioner has failed to set forth

18    what counsel might have said that would have had a reasonable probability of changing the

19    result.  Petitioner concedes he did not do so in his traverse.[11]  (Traverse at 16.)  "Failure to make

20    a closing argument is not ineffective assistance per se; there must be a reasonable probability that

21    the omission affected the outcome."  Nutall v. Greer, 764 F.2d 462, 466 (7th Cir. 1985).

22          Because the jury heard petitioner's telephone conversation with his mother

23    wherein he admitted killing the victim, and petitioner then took the stand and admitted to

24

25        [11]  Petitioner argues this was because an evidentiary hearing was never held, and asks the court to hold an evidentiary hearing now.  However, it is incumbent upon petitioner to demonstrate there is a factual dispute warranting an evidentiary hearing.  Townsend v. Sain, 372

26    U.S. 293, 313-14 (1963).

planning the robbery and shooting the victim, it is hard to imagine what a defense attorney might say in a closing argument.  But certainly petitioner was not prejudiced by defense counsel's failure to make a closing statement when faced with this overwhelming evidence.  Thus, this claim must also fail.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 5, 2005.

UNITED STATES MAGISTRATE JUDGE

1
delu2414.157